RICHFIELD OIL CORPORATION
v.
UNITED STATES.
No. 513-55.

United States Court of Claims.
Dec. 2, 1959.

See also 138 Ct.Cl. 520, 151 F.Supp. 333.

J. Franklin Fort, Washington, D. C., for plaintiff. Kominers & Fort, J. Alton Boyer and T. S. L. Perlman, Washington, D. C., were on the briefs.

Francis J. Steiner, Jr., Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

LITTLETON, Judge (Retired).

The plaintiff sues to recover just compensation for the alleged taking by the United States of the plaintiff's oil pipeline which was attached to a bridge of the Union Pacific Railroad Company over the Rio Hondo, a stream in Los Angeles County, California.

The pipeline had been attached to the railroad's bridge pursuant to an agreement dated August 1, 1949, between the railroad and the plaintiff. That agreement designated plaintiff as a licensee, provided for an annual rental "during the first 5-year term hereof" and provided for an adjustment of the rental "during each succeeding five-year term." The agreement further provided that "the license and permission hereby granted * * * may be revoked by [the railroad] at any time by giving the Licensee sixty (60) days' notice in writing of such revocation." Pursuant to the agreement, plaintiff installed a 14-inch oil pipeline along the railroad's right-of-way for a distance of about 2½ miles, getting its pipeline across the stream by attaching it to the railroad's bridge.

For some years before plaintiff attached its pipeline to the bridge, the United States had been contemplating the construction of a flood control project in the area of the Los Angeles River, of which the Rio Hondo is a tributary. On April 19, 1950 the United States informed the railroad that the flood con-

trol construction work would require the removal of the railroad's bridge over the Rio Hondo, and the replacing of it by a new bridge of different construction including, among other things, wider spans, at the same location. During the construction of the new bridge, after the removal of the old one, the railroad was to use a temporary by-pass bridge called a "shoofly" for a period of about six months.

The railroad and the United States negotiated a contract for the replacement of the old bridge by a new bridge. The contract, executed on September 19, 1950, provided that the United States would, using the railroad as its contractor for most of the work, build the shoofly, move the tracks to the shoofly, build the new bridge, move the tracks to the new bridge, and remove the shoofly. The contract provided that the railroad would

"5. * * * Cause the removal of the existing 14-inch oil line which is owned by the Richfield Oil Company and is attached to the main-line timber trestle, pursuant to license issued by the contractor (railroad), in such manner as to not interfere with the construction of the project. No payment shall be made by the Government for the removal of such oil line."

During the negotiation of the contract between the United States and the railroad, the railroad notified plaintiff that the pipeline would have to be removed from the bridge. Plaintiff requested the United States to agree to pay it the cost of removing the pipeline from the old bridge and replacing it upon the new bridge. This request was refused. Plaintiff removed its pipeline from the old bridge, attached its line temporarily to the shoofly, and, when the new bridge was completed, the plaintiff, pursuant to an agreement with the railroad entitled "Supplemental Agreement," attached its pipeline to the new bridge. Plaintiff's expense in connection with the work of removal and restoration was $16,643.70. This suit is for the recovery of that amount, with interest.

It is not necessary to determine the exact nature of plaintiff's interest in the railroad's property. Though its agreement with the railroad designated it as a licensee, it would seem that it was a lessee, with a tenancy terminable upon 60-days' notice. The notice was given, and was acted upon. The agreement stipulated for notice in writing, and such a notice may have been given, but, if it was not, the plaintiff waived that requirement by making no objection to the form of the notice.

The important question is, what was the value of the plaintiff's interest, in the circumstances. The railroad, which had the power to terminate plaintiff's interest, was negotiating a contract with the United States for the building of the new railroad bridge. The new bridge, the cost of which was to be borne almost entirely by the United States, was to be of great advantage to the railroad. The contract for the new bridge provided in unmistakable terms that the railroad would cause the plaintiff's pipeline to be removed, and would receive no compensation from the United States for so doing. The railroad, as hereinbefore stated, had the power to require plaintiff to remove its pipeline, without compensation, and by its contract with the United States, it had agreed to exercise that power, without any compensation to be paid by the United States.

In the circumstances, it was inevitable that the plaintiff's terminable interest would be terminated. Nothing short of unmitigated generosity, complete disregard of all self-interest, on the part of the Union Pacific Railroad, could have saved the plaintiff's interest from extinction. There is no evidence that the railroad did not mean what it said, and what it had the right to say, when it notified the plaintiff to remove its pipeline from the bridge.

The plaintiff is not entitled to recover and its petition will be dismissed.

The defendant's contingent claims against the Los Angeles County Flood

Control District, and against the Union Pacific Railroad Company, are dismissed without prejudice.

It is so ordered.

JONES, Chief Judge, and LARAMORE and WHITAKER, Judges, concur.